UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

In re:
Upper Valley Commercial Corporation,                    Chapter 11
                          Debtor                        Case No. 13-13110 JMD


**DEBTOR'S PLAN OF REORGANIZATION**
**DATED APRIL 14, 2014**

Upper Valley Commercial Corporation (the "Debtor") hereby proposes this plan of reorganization (the "Plan") to all known holders of claims and interests as authorized by Section 1121(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330 (the "Code") and moves the United States Bankruptcy Court for the District of New Hampshire (the "Bankruptcy Court") to enter an order confirming the Plan pursuant to Section 1129 of the Code, including § 1129(b).

**INTRODUCTION**

Upper Valley Commercial Corporation, a New Hampshire corporation, hereby proposes this Plan pursuant to Section 1121(a) of the Bankruptcy Code. The Disclosure Statement that accompanies this Plan discusses the Debtor's history, businesses, assets, and results of operations, and contains a summary and discussion of this Plan. Holders of Claims and Interests and parties to executory contracts and unexpired leases are encouraged to read the Disclosure Statement. No solicitation materials other than the Disclosure Statement and related materials transmitted therewith have been authorized by the Bankruptcy Court for use in soliciting acceptances or rejections of this Plan. To the extent there may be any inconsistency between the Plan and the Disclosure Statement, the Plan shall control.

**I.      Definitions & Construction**

**A.      Definitions**

As used herein, the following terms have the respective meanings specified below, subject to the rules of construction set forth in Section I.B hereof:

<u>Accounts Receivable</u> shall mean sums owed to the Debtor by borrowers who have borrowed money from the Debtor on a secured or unsecured basis in the ordinary course of the Debtor's pre-petition operations. As of the Petition date the Debtor was owed $12,168,250.81 on its Accounts Receivable.

<u>Accounts Receivable Debtors</u> shall mean those individuals or entities that owe money to the Debtor through a loan that the Debtor extended to them during the operation of the Debtor's business.

- 2 -

Administrative Claim shall mean a claim arising and allowable under Section 503(b) of the Bankruptcy Code with respect to the Debtor, including charges against the Debtor's estate under 28 U.S.C. Section 1930.

Allowed with respect to a Claim or Interest, shall mean any Claim or Interest (a) that is the subject of a timely filed proof of claim, or (b) any Claim or Interest that has been listed in the schedules filed with the Bankruptcy Court by the Debtor pursuant to Bankruptcy Code Section 521 and is not listed therein as disputed, unliquidated or contingent; and, in each such case as to which either (i) no objection to the allowance thereof or other similar pleadings has been filed before the Claims Objection Deadline, or (ii) an objection or other similar pleading has been filed and the Claim or Interest has been allowed by a Final Order but only to the extent so allowed.

Allowed Amount shall mean the amount of any Allowed Claim or Allowed Interest.

Bankruptcy Code shall mean 11 U.S.C. Sections 101 et seq., as in effect with respect to the Case on the Petition Date.  All Bankruptcy Code references herein  are to the Bankruptcy Code, unless otherwise stated.

Bankruptcy Court shall mean the United States Bankruptcy Court for the District  of New Hampshire, or any other court with jurisdiction over the Case.

Bar Date shall mean the date established by the Bankruptcy Court as the deadline  for filing proofs of claims or interests in the Case, or April 30, 2014.  The Bar Date for governmental entities in this case is July 1, 2014.

Case shall mean the Chapter 11 Case of the Debtor now pending in the Bankruptcy Court pursuant to Chapter 11 of the Bankruptcy Code.

Cash shall mean payment, including by check, issued by or on behalf of the Debtor with respect to any payment of collected funds required to be made pursuant to the Plan.

Claim shall mean a claim, as defined in Bankruptcy Code Section 101(5), against  the Debtor.

Claims Objection Deadline shall mean that date that is thirty (30) days after the Bar Date.

Class One Claims shall mean Pink Card Claims and Term Note Claims owed by the Debtor to non-Insider and Insider creditors to be repaid by the Debtor pursuant to the Plan.  These claims are described in Schedule I of the Plan and  Disclosure Statement.

Class Two Claims shall mean Pink Card Claims and Term Note Claims owed by the Debtor to Insider creditors who have agreed to be repaid after payment in full by the

3

Debtor of Allowed Class One Claims, Allowed Class Three Claims and Allowed Class Five Claims

Class Three Claims shall mean claims by the New Hampshire Bureau of Securities Regulation and the State of New Hampshire Banking Department with respect to any purported pre-petition violation of rules, regulations or laws of the State of New Hampshire.

Class Four Interests shall mean the equity interests in the Debtor owned by Alvin Fadden (47%), David Patten (47%), Jeffrey K. Bruckner (4%) and John Bruckner (2%).

Class Five Claims shall mean the Allowed Convenience Class Claims that are less than $1,000.  These claims are described in Schedule I of the Plan and Disclosure Statement.

Confirmation Date shall mean the date on which the Confirmation Order is entered on the docket of the Bankruptcy Court.

Confirmation Order shall mean the Order (which need not be a Final Order) confirming the Plan pursuant to Bankruptcy Code Section 1129.

Convenience Class Claims shall mean claims Allowed in an amount less than $1,000 which shall be paid in full with interest on the Effective Date.

Distribution Date shall mean the Effective Date and the following March 31, June 30, September 30 and December 31,  repeating.

Effective Date shall mean the date that is fourteen (14) days after the issuance of a Final Order confirming the Plan.

Encumbrances shall mean all liens, encumbrances, mortgages, hypothecations, pledges, and security interests of any kind whatsoever.

Fee Claim shall mean the Administrative Claim of a professional person for compensation and/or reimbursement of expenses.

Final Order shall mean an order or judgment of any court, administrative agency   or other tribunal as entered on its docket as to which (a) the time to appeal or petition for rehearing or certiorari has expired and as to which no appeal or motion for rehearing or petition for certiorari has been timely filed or taken, (b) if such an appeal or motion for rehearing or petition for certiorari has been timely filed or taken, such order or judgment has been affirmed by the highest tribunal in  which review was sought or such appeal, motion for rehearing or petition for certiorari was dismissed or otherwise terminated without modification of such order or judgment, and the time has expired within which any further proceeding for review may be commenced.

Insider shall mean a director, officer or person in control of the Debtor or relative of a director, officer or person in control of the Debtor.

Order shall mean an order of the Bankruptcy Court.

Petition Date shall mean December 31, 2013.

Pink Card Claims shall mean the unsecured demand claims of persons who have lent money to the Debtor on an unsecured basis.

Plan shall mean the Debtor's Plan of Reorganization Dated February 21, 2014, as it may be amended or modified by the Debtor from time to time, together with all exhibits, schedules and other attachments thereto, as the same may be amended or modified by the Debtor from time to time, incorporated herein by reference.

Plan Monitoring Committee shall mean a committee of three individuals comprised of the counsel for the official committee of unsecured creditors, counsel for the State of New Hampshire and counsel for unsecured creditor Crystal Farr, or their successors.

Post-Petition Bar Date shall mean the date which is sixty (60) days follow the Confirmation Date. It is the date by which holders of pre-confirmation administrative claims and/or professional fee claims must be filed with the Bankruptcy Court.

Priority Claim shall mean an Unsecured Claim arising before the Petition Date and allowable under Section 507(a)(2) through 507(a)(9) of the Bankruptcy Code.

Quarterly Available Cash shall mean the total cash held by the Debtor at the end of each annual quarter that is in excess of $100,000.

Reorganized Debtor shall mean the Debtor, or any successors thereto by merger, consolidation, acquisition, or otherwise, on and after the Effective Date.

Term Note Claims shall mean the unsecured claims of persons who lent money to the Debtor on an unsecured basis pursuant to a term promissory note, including but not limited to those with promissory notes bearing a maturity date of between six months and five years from the date of the loan.

Unsecured Claim shall mean a Claim which arose before the Petition Date and which is not secured by any interest in any property of the Debtor's estate, and shall include a Claim which arises from the rejection of an Executory Contract or Unexpired Lease, within the meaning of Section 365 of the Bankruptcy Code; provided, however, that in order to be an Unsecured Claim, such claim must be evidenced by a proof of claim which has been timely filed by the holder of the Claim (whether or not such proof of claim has been Allowed) prior to the Bar Date, or such Claim must be described on Schedule F filed by the Debtor and not noted as unliquidated, contingent or disputed on such Schedule (whether or not such claim is deemed Allowed).

5

**B.**     **Rules of Construction**

For purposes of this Plan, (i) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (ii) any reference in the Plan to a contract, instrument, release, indenture, agreement, or other document being in a particular form or on particular terms and conditions means that such document shall be substantially and materially in such form or substantially and materially on such terms and conditions; (iii) any reference in the Plan to a document, schedule, annex, or exhibit to the Plan, Plan Documentary Supplement, or Disclosure Statement filed or to be filed means such document, schedule, annex, or exhibit, as it may have been or may be amended, modified, or supplemented; (iv) unless otherwise specified, all references in the Plan to articles, sections, subsections, clauses, paragraphs, schedules, and exhibits are references to articles, sections, subsections, clauses, paragraphs, schedules, and exhibits of or to the Plan; (v) the words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, clause, or paragraph contained in the Plan; (vi) a term used herein that is not defined herein shall have the meaning ascribed to that term, if any, in the Bankruptcy Code or Bankruptcy Rules; and (vii) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply to the extent such rules are not inconsistent with the express terms of the Plan or any other provision in this Section I.B.

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) will apply.

## II.     Classification and Treatment of Claims and Interests

**A.**     **Summary**

The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, confirmation, and distribution pursuant to the Plan. Administrative Expense Claims and Priority Claims have not been classified and are excluded from the following classes in accordance with Section 1123(a)(1) of the Bankruptcy Code. A Claim or Interest is classified in a particular class only to the extent that the Claim or Interest qualifies within the description of that class and is classified in a different class to the extent that any remainder of the Claim or Interest qualifies within the description of such different class.

| Class | Composition | Status |
|---|---|---|
| 1 | Allowed Pink Card Claims and Term Note Claims owed by the Debtor to Insider and non-Insider creditors | Impaired – Entitled To Vote |
| 2 | Allowed Pink Card Claims and Term Note Claims owed by the | Impaired – Not Entitled To Vote |

6

| | | |
|---|---|---|
| | Debtor to Insider creditors who have agreed to be repaid outside of the plan after payment in full by the Debtor of holders of Allowed Class One Claims, Class Two Claims and Class Three Claims. | |
| 3 | Allowed Claims of the New Hampshire Bureau of Securities Regulation and the State of New Hampshire Banking Department with respect to any purported pre-petition violation of rules, regulations or laws of the State of New Hampshire. | Impaired – Entitled To Vote |
| 4 | Common Stockholder and Equity Interests | Impaired – Entitled To Vote |
| 5 | Convenience Claims in an Allowed amount less than $1,000 | Impaired – Entitled To Vote |

**B.    Administrative Expense Claims**

    **1.    Payment Generally.**  No Administrative Claim shall receive a distribution under this Plan except to the extent that it is an Allowed Administrative Claim.  Except to the extent that the holder of an Allowed Administrative Claim agrees to a different treatment, or as otherwise set forth in the Plan, and subject to the bar dates for Administrative Claims set forth in the following Sections, Reorganized Debtor shall (i) pay each Allowed Administrative Claim in full, in Cash, on the later of the (A) Effective Date and (B) the first Distribution Date after such Administrative Claim becomes an Allowed Administrative Claim or (ii) otherwise satisfy an Allowed Administrative Claim pursuant to an agreement between Reorganized Debtor and the non-debtor party.  Notwithstanding the foregoing, any Allowed Administrative Claim representing obligations incurred in the ordinary course of post-petition business by the Debtor, or that have been expressly authorized by the Bankruptcy Court or this Plan, shall be paid in full or performed by Reorganized Debtor in the ordinary course of business, in accordance with the terms of the particular obligation.

    **2.    Professional Claim Bar Dates**

    **(a) Bar Date**.  **The bar date for filing proofs of claims or applications for the payment of administrative claims (including for professional fees) shall be the Post-Petition Bar Date which is sixty (60) days after the Effective Date of the Plan.**  All applications for final compensation and reimbursement of Professional Fees and Expenses shall be filed by the Post-Petition Bar Date which means the sixtieth (60th) day after the Effective Date.  Any professional fees or reimbursement of expenses incurred by Reorganized Debtor subsequent to

7

the Effective Date may be paid by Reorganized Debtor without application to the Bankruptcy Court, provided, however, that the Bankruptcy Court shall retain jurisdiction to resolve any disputes regarding payment for professional services relating to the implementation of the Plan or the administration of the Chapter 11 Case.

**C.**     **Classification and Treatment of Claims**

The Plan shall be funded through a combination of the Debtor's Cash on hand and collections of Accounts Receivable.

- Under the Plan, the Debtor will collect accounts receivables owed to it and use those proceeds to pay its creditors on a quarterly basis.  As of the Petition Date, these accounts receivable totaled approximately $12,168,250.81.  The Debtor proposes to pay all of its cash over the sum of $100,000 to holders of Allowed Class One Claims on a *pro rata basis*, quarterly.  Class Five Claims are Convenience Class Claims under the amount of $1,000 which shall be paid upon the Effective Date.  Based on the Debtor's financial projection, a copy of which is attached hereto as Schedule II of the Plan and Disclosure Statement, the Debtor anticipates making quarterly payments to the holders of Allowed Class One Claims in the approximate average amount of $612,000 per quarter.  As identified in Schedule II, the Debtor anticipates its quarterly collections will fluctuate between a high of $1,500,000 to a low of $118,596.  Such payments will be made with interest at the demand note interest rate of 2%.

- Once the Allowed Class One and Class Five Claims are paid in full, 100% of quarterly payments made thereafter will be made to holders of Allowed Class Three Claims until such claims are paid in full.

- Allowed Class Five Claims, which are Convenience Class Claims less than $1,000, will be paid in full upon the Effective Date, with interest.

- Once the holders of Allowed Class One Claims, Allowed Class Three Claims and Allowed Class Five Claims are paid in full, the Debtor will be deemed to have satisfied its repayment obligations under the Plan.  The Debtor will thereafter begin making payments to holders of Allowed Class Two claims outside of the bankruptcy.  The Debtor anticipates payment in full to holders of Allowed Class Two claims.  The Class Four Interests shall be satisfied by providing the holders of such interests with stock in the Reorganized Debtor in proportion to the shares owned immediately prior to filing the bankruptcy.

**1.     Class One – Unsecured Non-Insider and Insider Claims**

**a.     Classification**:  Class One consists of Allowed Pink Card Claims and Term Note Claims owed by the Debtor to non-Insider and Insider creditors.

**b.     Allowance**:  These claims are identified in Schedule I to the Plan and Disclosure Statement and total $5,994,080.62.  If any holder of Class One Claims

8

disagrees with the amount of their claim described in Schedule I they may file a proof of claim on or before the Bar Date.  You do not need to file a proof of claim if you agree with the amount of your claim in Schedule I.  The Reorganized Debtor will have the right to make and file objections to Class One Proofs of Claim and will serve a copy of each objection upon the holder of any Claim to which the objection is made, on or before the Claims Objection Deadline.  Class One Claims as to which no objection is timely filed are deemed Allowed Claims.  Notwithstanding any prior order of the Bankruptcy Court or the provisions of Bankruptcy Rule 9019, as of the Effective Date, Reorganized Debtor may settle or compromise any Class One Claim that is a disputed claim without approval of the Bankruptcy Court, provided that such settlement or compromise is evidenced by a writing signed by a duly authorized representative of Reorganized Debtor.  Debtor will not reclassify, re-characterize, object to or take any adverse action with respect to any of the Claims identified in Schedule I, except to the extent any such Creditor files a proof of claim that deviates materially from Schedule I, the Debtor may file an objection to such Claim as provided for herein. Subject only to the preceding sentence, all Claims listed is Schedule 1 are undisputed, non-contingent and liquidated.

      **c.**    **Treatment**:  Each holder of an Allowed Class One Claim shall receive a quarterly cash distribution.  The Debtor will make quarterly payments in the amount of its Quarterly Available Cash to holders of Allowed Class One Claims on a *pro rata* basis.  These claims will be repaid with interest at the demand note interest rate of 2%. These claims are impaired.  These payments will naturally fluctuate according to the Debtor's collections of Accounts Receivable.

      **d.**    **Disputed Claims**:  To the extent a Class One Claim is not an Allowed Claim as of the Claims Objection Deadline, cash shall be distributed on the basis of Class One Claims then Allowed with any cash on account of disputed Class One Claims held in reserve.  If and as additional Class One Claims are thereafter Allowed, Reorganized Debtor shall make cash payments to holders entitled thereto following a Final Order or agreement of the Parties allowing such Claim.  Holders whose Claims are disallowed in full shall receive nothing pursuant to the Plan.

**2.  Class 2 – Unsecured Subordinated Insider Claims**

      **a.**    **Classification**: Class Two consists of the Allowed Pink Card Claims and Term Note Claims owed by the Debtor to Insider Creditors who have agreed to be repaid outside of the plan once the holders of Allowed Class One Claims, Allowed Class Three Claims and Allowed Class Five Claims are paid in full.  These Claims are subordinated to the holders of Allowed Class One, Class Three and Class Five claims.

      **b.**    **Allowance**:  These claims are identified in Schedule I to the Plan and Disclosure Statement and total $4,550,783.60.  If any holder of Class Two Claims disagrees with the amount of their claim described in Schedule I they may file a proof of claim on or before the Bar Date.  You do not need to file a proof of claim if you agree with the amount of your claim in Schedule I.  The Reorganized Debtor will have the right to make and file objections to Class Two Proofs of Claim and will serve a copy of each objection upon the holder of any Claim to which the objection is made, on or before the

Claims Objection Deadline.  Class Two Claims as to which no objection is timely filed are deemed Allowed Claims.  Notwithstanding any prior order of the Bankruptcy Court or the provisions of Bankruptcy Rule 9019, as of the Effective Date, Reorganized Debtor may settle or compromise any Class Two Claim that is a disputed claim without approval of the Bankruptcy Court, provided that such settlement or compromise is evidenced by a writing signed by a duly authorized representative of Reorganized Debtor.

     **c.**    **Treatment**:  The holders of Allowed Class Two Claims will be paid by the Debtor, in full, outside of the bankruptcy once the holders of Allowed Class One Claims, Allowed Class Three Claims and Allowed Class Five Claims are paid in full.

**3.  Class 3 – Unsecured Claims of the State of New Hampshire**

     **a.**    **Classification**:  Class Three consists of the New Hampshire Bureau of Securities Regulation and the State of New Hampshire Banking Department with respect to any purported pre-petition violation of rules, regulations, or laws of the State of New Hampshire

     **b.**    **Allowance**:  The holder of Class Three claims has yet to file a proof of claim and the amount of its claim is unknown.  The Reorganized Debtor will have the right to make and file objections to any Class Three Proof of Claim and will serve a copy of each objection upon State of New Hampshire, provided, however, that no party may seek to further subordinate Class Three Claims.  Notwithstanding any prior order of the Bankruptcy Court or the provisions of Bankruptcy Rule 9019, as of the Effective Date, Reorganized Debtor may settle or compromise any Class Three Claim that is a disputed claim without approval of the Bankruptcy Court, provided that such settlement or compromise is evidenced by a writing signed by a duly authorized representative of Reorganized Debtor.  No party may seek to further subordinate or re-characterize the State's claim.

     **c.**    **Treatment**:  Each holder of an Allowed Class Three Claim shall receive a quarterly cash distribution.  The Debtor will make quarterly payments in the amount of its Quarterly Available Cash to holders of Allowed Class Three Claims on a *pro rata* basis with interest at the demand note interest rate of 2%.  These claims are impaired. These payments will naturally fluctuate according to the Debtor's collections of Accounts

Receivable. Such payments will be subordinated only to the claims of holders of Allowed Class One Claims and Allowed Class Five Claims,

### 4.  Class 4 – Common Stockholder and Equity Interests

    **a.**  **Classification**:  Class Five shall consist of the equity interest in the Debtor owned by Alvin Fadden (47%), David Patten (47%), Jeffrey K. Bruckner (4%) and John Bruckner (2%).

    **b.**  **Allowance and Treatment**:  The holders of Class Four Interests shall be issued stock in the Reorganized Debtor in the same proportionate ownership amount as existed on the Petition Date.

### 5.  Class 5 – Convenience Class Claims

    **a.**  **Classification**:  Class Five shall consist of the non-Insider Claims that are less than $1,000.  The claims total $7,856.44.

    **b.**  **Allowance and Treatment**:  The holders of Allowed Class Five Claims shall receive payment in full on the Effective Date, with interest.

### III.  Method of Distributions Under the Plan

**A.**  **Responsibility for Distributions**

    Reorganized Debtor shall be responsible for distributions pursuant to the Plan.  Neither the Debtor nor Reorganized Debtor, nor any of their employees, officers, directors or agents shall be liable for (i) any acts or omissions (except for gross negligence or willful misconduct) in connection with implementing the distribution provisions of this Plan and the making or withholding of distributions pursuant to the Plan, or (ii) any change in the value of distributions made pursuant to the Plan resulting from any delays in making such distributions in accordance with the Plan's terms (including but not limited to any delays caused by the resolution of Disputed Claims) provided such acts or omissions are made in accordance with the Plan. Together with each such distribution under the Plan the Debtor shall also transmit a brief summary of the Debtor's collection activities since the previous Distribution Date in the form of Schedule V, attached hereto.

**B.**  **Funding of Cash Payments**

    **1.**  Upon the Occurrence of the first Distribution Date the Debtor will distribute all of its cash above the sum of $100,000 in accordance with this Plan.

    **2.**  The Debtor will continue to collect Accounts Receivable, described in Schedule III, as estimated in Schedule II and make payments to its creditors on all subsequent Distribution Dates in accordance with this Plan.

**3.**  Payment of the Allowed Claims under this Plan will be funded entirely from collection of Accounts Receivable; the Debtor does not anticipate any recovery of so-called avoidance causes of action.

**4.**  The Debtor owns two pieces of real property.  The Bath, NH property is valued on the Debtor's schedules at $375,000 and in North Haverhill, NH is valued on it schedules at $220,000.  The Debtor has recently been approached by a third party about selling the North Haverhill, NH property and is pursuing same.  At the same time the Debtor will also start the process of selling the Bath property.  The proceeds from these sales will be paid to creditors according to Schedule II.

**C.**    **Cash Payments**

Cash Payments made pursuant to this Plan shall be in U.S. dollars by checks drawn on a domestic bank selected by Reorganized Debtor, or by wire transfer from a domestic bank, at Reorganized Debtor's option.  Except to the extent this Plan provides expressly to the contrary, no interest arising after either the Petition Date or the Effective Date shall accrue or be payable to holders of Allowed Claims under this Plan.

To the extent that a Class One Claim holder either directly or indirectly through an entity it controls is an Accounts Receivable Debtor, distributions to such creditor shall be postponed until such time as payment of the receivable is made in full.  Alternatively, the Debtor may apply such amount to be distributed to offset such holder's Account Receivable.

**D.**    **Issuance and Distribution of New Common Stock**

On or before the Effective Date, the Debtor shall authorize and issue stock in the Reorganized Debtor to holders of Allowed Class Five Interests.  After the Effective Date, nothing herein shall prohibit Reorganized Debtor from issuing additional New Common Stock in accordance with its certificate of incorporation and by-laws.

**E.**    **Tax Information**

Any federal, state or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from distributions hereunder.  Reorganized Debtor, to the extent it deems it necessary to fulfill any obligation to any taxing authority, may require persons who are to receive distributions under the Plan to provide Reorganized Debtor with appropriate tax-payer identification information within seventy five (75) days after such request.  If any Person shall fail to provide the Debtor with such information within seventy five (75) days of such request, this failure shall be deemed a waiver of all Claims against the Debtor or Reorganized Debtor (including the right to any payment by the Debtor or Reorganized Debtor), and the funds that would otherwise have been distributed to such Person shall revert to Reorganized Debtor, and be distributed or refunded as if such funds were an undeliverable distribution pursuant to Section III.F.2 of the Plan.

12

**F.**    **Delivery of Distributions and Undeliverable or Unclaimed Distributions**

   **1.    Delivery of Distributions Generally**.  Except as provided below with respect to holders of undeliverable distributions, distributions to holders of Allowed Claims and Allowed Administrative Expense Claims shall be distributed by mail as follows:  (1) with respect to each holder of an Allowed Claim that has filed a proof of claim, at the address for such holder appearing on the proof of claim; (2) with respect to each holder of an Allowed Claim that has not filed a proof of claim, at the address reflected on the Schedules filed by the Debtor, provided, however, that if the Debtor or Reorganized Debtor has received a written notice of a change of address for such holder, the address set forth in such notice shall be used; or (3) with respect to each holder of an Allowed Administrative Expense Claim, at such address as the holder may specify in writing.

   **2.    Undeliverable Distributions**.  If the distribution to the holder of any Allowed Claim or Allowed Administrative Expense is returned to Reorganized Debtor as undeliverable, no further distribution shall be made to such holder unless and until Reorganized Debtor is notified in writing of such holder's then current address.  Subject to the following paragraph, unclaimed Cash shall be held in trust for the benefit of the potential claimants of such funds.

   If any distribution remains unclaimed for a period of six (6) months after it has been delivered (or attempted to be delivered) in accordance with the Plan to the holder entitled thereto, such unclaimed property shall be forfeited by such holder.  In such cases any property held for distribution on account of such Claims or Administrative Expense Claims shall be retained by Reorganized Debtor, as follows: pursuant to Bankruptcy Code Section 347(b), any undistributed Cash shall be the property of Reorganized Debtor, free from any restrictions thereon and such undistributed Cash shall not be subject to the unclaimed property or escheat laws of any state or other governmental unit.  Nothing contained in this Plan shall require the Debtor or Reorganized Debtor to attempt to locate any holder of a Claim or Administrative Expense Claim.

**G.**    **Recoupment, Setoffs and Subordination**

   Reorganized Debtor may, but shall not be required to, recoup or set off against (i) any Claim and (ii) the distributions to be made pursuant to the Plan in respect of such Claim, any claims or causes of action of any nature whatsoever the Debtor or Reorganized Debtor may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or Reorganized Debtor of any such claim or cause of action they may have against such holder.

   The Debtor or Reorganized Debtor may object to any Claim on any basis including, without limitation, that such Claim should be subordinated pursuant to Section 510 of the Bankruptcy Code.

## IV.    Implementation of the Plan

**A.**    **Management of Reorganized Debtor**

   On the Effective Date, all directors of the Debtor shall be deemed to have resigned, without any further action on the part of any Person.  The Reorganized Debtor will retain Janice

13

Brown and David Patten to implement the Plan. The Debtor will pay Mr. Patten on a quarterly basis 3% of the gross amount of Accounts Receivable he collects.  Given the Debtor's projected collections of $7,526,484 during the Plan, Mr. Patten would be paid $225,794, which equates to $75,264 *per annum* if he performs as expected; obviously if he collects less, he will be paid less. The Debtor will pay Mrs. Brown $41,800 per year for her services.  Mr. Patten is an equity owner of the Debtor and is the single largest creditor of the Debtor, being owed $2,955,000.  Mr. Patten has elected to be treated as a Class II creditor, which means he will not be repaid *anything* on his claim until all other Allowed Claims are paid in full.  The Debtor shall adhere to the budget attached to the Plan as Schedule IV.

## B.      __Third Party Oversight__

The Debtor will retain an outside CPA/Auditor, Christopher Johnson, to periodically monitor collections of the Accounts Receivable and the management of the proceeds.  Mr. Johnson will inspect the Debtor's books and records each month for the first six months following Confirmation, then quarterly thereafter for the 36 months following Confirmation.  Mr. Johnson will issue a brief report to the Plan Monitoring Committee and the US Trustee after each such visit disclosing the amounts collected by the Debtor during such reporting period and identifying any activities that are inconsistent with the Plan. Mr. Johnson will also be able to communicate directly with the Plan Monitoring Committee regarding his finding.  For these services Mr. Johnson will be paid $200 per hour by the Debtor.

The Plan Monitoring Committee will monitor the Debtor's collections of its Accounts Receivable depicted in Schedule II.  If at the end of any calendar quarter during the Plan the Debtor has recovered projected Accounts Receivable (on a cumulative basis) that is less than 75% of the Debtor's projected collections (on a cumulative basis), or if the Plan Monitoring Committee believes that cause otherwise exists for such, the Plan Monitoring Committee may, but is not required to, file a motion with the Court requesting the appointment of a Chapter 11 trustee or take such other action as it deems to be in the best interest of the Debtor's estate.  The Debtor will compensate the Plan Monitoring Committee each at the rate of $200 per hour.

The Debtor does not believe it will have to materially compromise any of the Accounts Receivable obligations to meet the collections identified in Schedule II.  That is not to say that the Debtor does not anticipate the some of the Account Debtors will have difficulty either making their payments or refinancing, but the Debtor believes there are more than enough good and collectible Accounts Receivable to satisfy payments under the Plan, even accounting for difficult credits (which are identified in Schedule II).  The Debtor will not be allowed to compromise or settle any of the Accounts Receivable obligations owed by Insiders or companies owned or controlled by Insiders without written approval from the Plan Monitoring Committee. Likewise, the Debtor may not compromise any Accounts Receivable obligations owed by Non-Insiders in an amount greater than 40% without written approval from the Plan Monitoring Committee.  By way of example if the Debtor is owed $100,000 by a non-Insider, the Debtor may not accept less than $60,000 in compromise of that claim without approval of the Plan Monitoring Committee.

The Debtor may pay the fees of Mr. Johnson and the Plan Monitoring Committee directly from its available clash after the Effective Date without further order of the Court.

**C.      Re-vesting of Assets**

Except as otherwise provided in the Plan, on the Effective Date, the property of the estate of the Debtor shall re-vest in Reorganized Debtor, including but not limited to the Accounts Receivable and any other claims or rights of action (whether known or unknown, and whether or not identified in the Schedules or Disclosure Statement) that the Debtor or Reorganized Debtor has asserted or may assert against any other entity.  Reorganized Debtor may operate its business and may use, acquire, and dispose of property without supervision by the Bankruptcy Court or the United States Trustee and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules.  As of the Effective Date, all property of Reorganized Debtor shall be free and clear of all Claims, liens, encumbrances, and other interests of creditors and holders, except as otherwise provided herein.

**D.      Implementation of Bankruptcy Code Section 1146(a)**

Any transfers or other transactions that occur pursuant to or in connection with this Plan or the Confirmation Order may not be taxed under any federal, state, or local law imposing a stamp tax, real estate transfer tax, recording tax, or similar tax.

**E.      Closing of the Case**

Reorganized Debtor may close its Chapter 11 Case after its estate is fully administered in accordance with Bankruptcy Code Section 350 and Bankruptcy Rule 3022.

## V.      Executory Contracts and Unexpired Leases

**A.      Assumption**

**1.  Assumption and Assignment Generally**.  Effective upon the Effective Date, the Debtor hereby assumes the executory contracts listed below.  Such assumption shall be only to the extent that the listed items constitute executory contracts and unexpired leases within the meaning of Section 365 of the Bankruptcy Code.  Any contract or lease assumed pursuant to this Plan shall be assumed, or assumed and assigned, as previously amended or otherwise modified by the parties thereto, whether before or after the Petition Date.  The Debtor reserves the right to amend the list of contracts and leases to be assumed, or assumed and assigned, through the conclusion of the Confirmation Hearing.

Counter Party

David Patten
386 Route 10
3769 Dartmouth College Highway
Piermont, NH 03779

Nature of Contract

15

Lease for Debtor's operating facility at 2769 Dartmouth College Highway.  The lease is current.  Rent is $2,000 per month.

The Debtor reserves the right to amend the list of contracts and leases to be assumed, or assumed and assigned, through the conclusion of the Confirmation Hearing.

**2. Approval of Assumptions and Assignments Under the Plan**.  Entry of the Confirmation Order shall constitute approval of the assumptions under the Plan pursuant to Sections 365(a) and 363 of the Bankruptcy Code, effective as of the Effective Date.  All Cure Payments that may be required by Section 365(b)(1) of the Bankruptcy Code shall be made on the later of the Effective Date, or as soon thereafter as determined by a Final Order or as otherwise satisfied pursuant to an agreement between the Debtor and the non-debtor party.  There are currently no cure payments and these leases are current.

**3. Enforcement of Section 365(b) of the Code**.  The assumption or assumption and assignment, as applicable, of any executory contract or unexpired lease under the Plan shall be authorized notwithstanding the existence of any cross-default provision or other provision in such contract or lease that conditions or modifies the rights of the Debtor or the obligations of the non-debtor parties based on (i) the insolvency or financial condition of the Debtor or (ii) performance under any other contract or agreement.  Any breach, default, or failure to perform under any contract or agreement that is not assumed, or assumed and assigned, by the Debtor shall in no way constitute grounds to terminate the rights of the Debtor, Reorganized Debtor, or any of their assignees under any contract or lease that is assumed, or assumed and assigned, under this Plan, or excuse non-performance by the other party to such contract or lease, or otherwise affect, modify, or reduce the rights of the Debtor, Reorganized Debtor, or their assignees under such assumed, or assumed and assigned, contract or lease.

**B.     Rejection**

**1. Rejection Generally**.  Under the Plan, unless an executory contract is the subject of a motion to assume the contract and the motion is pending as of the Effective Date or is otherwise dealt with by an Order of the Bankruptcy Court entered on or prior to the Effective Date, any and all executory contracts and unexpired leases of the Debtor shall be deemed rejected as of the Effective Date.  The Debtor hereby rejects the following Executory Contract.

Counter Party

Derrick O'Donnell
2707 Dartmouth College Highway
North Haverhill, NH 03774

Nature of Contract

16

Debtor leases commercial space to Mr. O'Donnell for $10,000 per year.  The lease is current.

**2. Approval of Rejection Under the Plan**.  Entry of the Confirmation Order shall constitute approval of the rejections under the Plan pursuant to Sections 365(a) and 363 of the Bankruptcy Code, effective as of the Effective Date.  To the Extent Mr. O'Donnell has a claim for rejections damages he may file such a claim within sixty (60) days of the Effective Date and to the extent such claim is an Allowed Claim it will be treated as a Class I Claim..

## VI.    Effectiveness of the Plan

### A.    Effective Date

The effective date of the Plan (referred to in the Plan as the "Effective Date") is the date that is 14 days after the issuance of a final order confirming the Plan.

### B.    Conditions Precedent

The Plan shall not become effective unless and until the following conditions shall have been satisfied or waived:

(1)    The Confirmation Order, in form and substance reasonably satisfactory to the Post-Petition Investors, shall have been entered on the docket of the Bankruptcy Court in the Chapter 11 Case for at least fourteen (14) days (as calculated in accordance with Bankruptcy Rule 9006(a));

(2)    The Confirmation Order shall have been entered and no stay of the Confirmation Order shall be in effect;

(3)    All actions, other documents and agreements necessary to implement the Plan shall have been executed, delivered, and, if necessary, properly recorded, and shall have become effective, and;

(4)    There shall have been no major impairment or destruction or uninsured loss of any material physical asset necessary to the operation of the business as heretofore conducted by the Debtor.

## VII.    Release and Discharge

### A.    Discharge

Except as otherwise expressly provided in Section 1141 of the Bankruptcy Code or the Plan, the distributions made pursuant to and in accordance with the applicable terms and conditions of the Plan are in full and final satisfaction, settlement, release, and discharge as against the Debtor and Reorganized Debtor of any debt of the Debtor that arose before the Confirmation Date, any debt of the Debtor of a kind specified in Section 502(g), 502(h), or

502(i) of the Bankruptcy Code, and all Claims against the Debtor of any nature, including, without limitation, any interest accrued thereon from and after the Petition Date, whether or not (i) a proof of Claim based on such debt, obligation, or equity interest is filed or deemed filed under Section 501 of the Bankruptcy Code, (ii) such Claim is an Allowed Claim under Section 502 of the Bankruptcy Code, or (iii) the holder of such Claim has accepted the Plan.

B.      **Injunction Relating to the Plan**

As of the Effective Date, all Persons are hereby permanently enjoined from commencing or continuing, in any manner or in any place, any action or other proceeding, whether directly, indirectly, derivatively, or otherwise against the Debtor or Reorganized Debtor, on account of, or respecting any Claims, debts, rights, causes of action, liabilities, or interests discharged pursuant to the Plan, except to the extent expressly permitted under the Plan.

C.      **Cancellation and Release of Existing Indebtedness and Liens**

Except as may otherwise be provided in the Plan, on the Effective Date, all credit agreements, promissory notes, mortgages, security agreements, invoices, contracts, agreements, and any other documents or instruments evidencing Claims against the Debtor, together with any and all Liens securing same, shall be cancelled, discharged, and released without further act or action by any Person under any applicable agreement, law, regulation, order, or rule, and the obligations of the Debtor thereunder shall be deemed cancelled, discharged, and released.  To the extent deemed necessary or advisable by Reorganized Debtor, any holder of a Claim shall promptly provide Reorganized Debtor with an appropriate instrument of cancellation, discharge, or release, as the case may be, in suitable form for recording wherever necessary to evidence such cancellation, discharge, or release, including the cancellation, discharge, or release of any Lien securing such Claim.

D.      **Rights of Recoupment and Setoffs**

Except as otherwise provided in this Plan, nothing contained in this Plan shall constitute a waiver or release by the Debtor of any rights of recoupment and/or setoff the Debtor may have against any Person.

## VIII.    **Retention of Jurisdiction**

Following the Confirmation Date, and further following the Effective Date, the Bankruptcy Court shall retain jurisdiction of all matters arising out of, or related to  the Chapter 11 Case and the Plan pursuant to, and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(1)    to hear and determine motions, if any, for the assumption, assumption and assignment, or rejection of executory contracts or unexpired leases, and for determination of Cure Payments related thereto, that are pending as of the Effective Date, and the allowance, estimation, or disallowance of Claims resulting therefrom;

18

(2)   to determine any and all adversary proceedings, applications, motions, and contested matters arising in or related to the Chapter 11 Case, including, but not limited to, Avoidance Power Causes of Action;

(3)   to ensure that distributions to holders of Allowed Administrative Expense Claims and Allowed Claims are accomplished as provided herein;

(4)   to hear and determine any objections to Administrative Expense Claims, to proofs of claims, and to proofs of Interests filed both before and after the Confirmation Date, and to allow, estimate, or disallow any Disputed Administrative Expense Claim or Disputed Claim, in whole or in part;

(5)   to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(6)   to enforce the Plan and issue orders in aid of execution of the Plan and to issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with this Plan or its execution or implementation by any entity;

(7)   to consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in the Plan or any order of the Bankruptcy Court, including, without limitation the Confirmation Order;

(8)   to hear and determine all applications for compensation and reimbursement of expenses of professionals under Sections 330, 331, and 503(b) of the Bankruptcy Code, and to resolve any disputes regarding payment for professional services incurred after the Effective Date for purposes of implementing the Plan or administering the Chapter 11 Case;

(9)   to hear and determine any disputes arising in connection with the interpretation, implementation, execution, or enforcement of the Plan, the Confirmation Order;

(10)  to recover all assets of the Debtor and property of the estate, wherever located;

(11)  to hear and determine any matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

(12)  to hear any other matter not inconsistent with the Bankruptcy Code; and

(13)  to enter a final decree closing the Chapter 11 Case.

19

**IX.**      **Miscellaneous Provisions**

**A.**      **Payment of Statutory Fees**

All quarterly fees due and payable to the Office of the United States Trustee pursuant to Section 1930(a)(6) of Title 28 of the United States Code shall be paid in full on or before the Effective Date, as required by Section 1129(a)(12) of the Bankruptcy Code.  Reorganized Debtor shall remain responsible for compliance with applicable reporting requirements of the Office of the United States Trustee and timely payment of quarterly fees due and payable after the Effective Date and until Reorganized Debtor's Chapter 11 Case is closed.

**B.**      **Preservation of Rights and Defenses**

     **1.**      Except to the extent such rights, claims, causes of action, defenses, and counterclaims are expressly and specifically released in connection with the Plan or in any settlement agreement approved during the Chapter 11 Case, (i) any and all rights, claims, causes of action, defenses, and counterclaims accruing to the Debtor shall remain assets of and vest in Reorganized Debtor, whether or not litigation relating thereto is pending on the Effective Date, and whether or not any such rights, claims, causes of action, defenses, and counterclaims have been Scheduled or otherwise listed or referred to in this Plan, the Disclosure Statement, or any other document filed with the Bankruptcy Court, and (ii) neither the Debtor nor Reorganized Debtor waives, relinquishes, or abandons (nor shall they be estopped or otherwise precluded from asserting) any right, claim, cause of action, defense, or counterclaim that constitutes property of the Debtor's estate, (a) whether or not such right, claim, cause of action, defense or counterclaim has been listed or referred to in the Schedules, this Plan, the Disclosure Statement, or any other document filed with the Bankruptcy Court, (b) whether or not such right, claim, cause of action, defense, or counterclaim is currently known to the Debtor, and (c) whether or not a defendant in any litigation relating to such right, claim, cause of action, defense, or counterclaim filed a proof of claim in the Chapter 11 Case, filed a notice of appearance or any other pleading or notice in the Chapter 11 Case, voted for or against this Plan, or received or retained any consideration under this Plan.  Without in any manner limiting the scope of the foregoing, notwithstanding any otherwise applicable principle of law or equity, including, without limitation, any principles of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, or refer to a right, claim, cause of action, defense, or counterclaim, or potential right, claim, cause of action, defense, or counterclaim in the Debtor's Schedules, this Plan, the Disclosure Statement, or any other document filed with the Bankruptcy Court, shall in no manner waive, eliminate, modify, release, or alter Reorganized Debtor's right to commence, prosecute, defend against, settle, and realize upon any rights, claims, causes of action, defenses, or counterclaims that any of the Debtor or Reorganized Debtor has or may have as of the Confirmation Date.  Reorganized Debtor may commence, prosecute, defend against, recover on account of, and settle all rights, claims, causes of action, defenses, and counterclaims in its sole discretion in accordance with what is in the best interests, and for the benefit, of Reorganized Debtor.  The rights referred to herein are the "Retained Actions."

     **2.**    The Debtor or Reorganized Debtor may retain the Tamposi Law Group, P.C. ("TLG") as it may deem appropriate to file adversary proceedings, civil actions, equity

20

proceedings, suits, and other proceedings, or continue the prosecution of any pending proceedings against any person or entity against whom or which Debtor or Reorganized Debtor has or may have a cause of action (the "Post-Petition Actions").  The terms of any such retention shall be upon the same terms as previously approved by this Court.  After the Effective date the Debtor may pay TLG in the ordinary course of its business for Post-Petition Actions.

**C.**     **Binding Effect**

The Plan shall be binding upon and inure to the benefit of the Debtor, Reorganized Debtor, holders of Claims, holders of Interests, and their respective successors, assigns, heirs, and beneficiaries.

**D.**     **Revocation or Withdrawal**

The Debtor reserves the right to revoke or withdraw this Plan prior to the Confirmation Date.  If the Debtor revokes or withdraws the Plan prior to the Confirmation Date, if confirmation is denied by a Final Order, or if the Effective Date does not occur by the date that is not later than fourteen (14) days after the Confirmation Date, then the Plan shall be deemed null and void, unless such deadline is extended by the Bankruptcy Court.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtor or any other entity or to prejudice in any manner the rights of the Debtor or any entity in any further proceedings involving the Debtor.

**E.**     **Nonconsensual Confirmation**

With respect to any impaired Class of Claims or Interests that fails to accept, or that is deemed not to accept, the Plan in accordance with Section 1129(a)(8) of the Bankruptcy Code, the Debtor (i) requests that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code, and (ii) in accordance with Section IX.F below, the Debtor may modify the Plan in accordance with Section 1127(a) of the Bankruptcy Code.

**F.**     **Modification of the Plan**

The Debtor or Reorganized Debtor, may alter, amend, or modify the Plan pursuant to Section 1127 of the Bankruptcy Code.  The provisions of this Plan shall not be severable unless such severance is agreed to by the Debtor.

**G.**     **Amendment to Schedules**

Neither the Debtor nor the Reorganized Debtor shall amend the Schedules in a manner, including without limitation, amending the Schedules to change any Claim originally scheduled by the Debtor as "disputed" to undisputed or as "contingent" to non-contingent or as "unliquidated" to a liquidated amount.

**H.**     **Governing Law**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of New Hampshire (without reference to its

conflict of law rules) shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, unless otherwise specifically provided in such agreements, documents, or instruments.

**I.**     **Notices**

        Any notice to the Debtor or the Reorganized Debtor required or permitted to be provided under the Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) reputable overnight delivery service, freight prepaid, to be addressed as follows (as applicable):

| | | |
|---|---|---|
| Debtors or Reorganized Debtor | Upper Valley Commercial Corporation<br>2769 Dartmouth College Highway, North Haverhill, NH 03774<br>*and*<br>The Tamposi Law Group, P.C.<br>159 Main Street<br>Nashua, NH 03060<br>Peter@tlgnh.com | Attn:  Peter N. Tamposi, Esq. |
| Plan Monitoring Committee | William S. Gannon, P.C.<br>889 Elm St.<br>Manchester, NH 03101<br>bgannon@gannonlawfirm.com<br><br>Bernstein Shur<br>670 North Commercial St.<br>Suite 108<br>PO Box 1120<br>Manchester, NH 03105-1120<br>jrood@bernsteinshur.com<br><br>State of New Hampshire<br>Department of Attorney General<br>33 Capitol St.<br>Concord, NH 03301-6397<br>Peter.roth@doj.nh.gov | Attn: William S. Gannon, Esq.<br>Peter Roth, Esq.<br>Jennifer Rood, Esq. |
| Committee of Unsecured Creditors | Bernstein Shur<br>670 North Commercial St.<br>Suite 108<br>PO Box 1120<br>Manchester, NH 03105-1120<br>jrood@bernsteinshur.com | Attn:  Jennifer Rood, Esq. |
| United States Trustee for the District of New Hampshire | Office of the United States Trustee<br>1000 Elm Street,<br>Manchester, NH 03101<br>Ann.Marie.Dirsa@usdoj.gov | Attn:  Anne Marie Dirsa, Esq. |

Respectfully submitted,

UPPER VALLEY COMMERCIAL CORPORATION
By its Attorneys,
THE TAMPOSI LAW GROUP, P.C.

April 14, 2014          By: /s/ Peter N. Tamposi
                        Peter N. Tamposi, Esquire
                        BNH #04931
                        159 Main Street
                        Nashua, New Hampshire 03060
                        (Tel) (603) 204-5513
                        (Fax) (603) 204-5515

23